UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLAYTON R. POORE, DOROTHY ANN
TESKE, SHARON RIGGS, DENNIS AND MERRIE
LOU HAWKE, JOHN AND BARBARA ANDERSON,
ROBERT AND MARY ELLEDGE, ROBERT AND      Civil No. CV 03-525-HA
MARIE POSCHWATTA, JAMES AND MARIE     OPINION AND ORDER
GUNDIFF, JERRY AND SELMA CUSICK,
HAROLD AND LINDA HUIRAS, OWEN AND
DONNA ENEVOLDSEN,

                 Plaintiffs,

     v.

SIMPSON PAPER COMPANY, a Washington
corporation,

                 Defendant.

---

Thomas K. Doyle
Heidi K. Brown
Bennett, Hartman, Morris & Kaplan
111 S.W. 5th Avenue, # 1650
Portland, Oregon 97204
     Attorneys for Plaintiff

Douglas S. Parker
John E. Kennedy
Preston Gates & Ellis
222 S.W. Columbia Street, Suite 1400
Portland, Oregon 97201
	Attorneys for Defendant.

HAGGERTY, Chief Judge:

Plaintiffs allege violations of the Employee Retirement Income Security Act (ERISA) and § 301 of the Labor-Management Relations Act (LMRA) against their (or their spouses') employer, defendant Simpson Paper Company. Oral argument on the parties' cross motions for summary judgment was heard on September 20, 2005. For the following reasons, summary judgment in this matter is granted to defendant Simpson Paper Company, and plaintiffs' motion is denied.

## FACTUAL BACKGROUND

There are no material disputes regarding the relevant factual background. Defendant Simpson Paper Company (hereinafter referred to as Simpson, or defendant) purchased the Evergreen Mill in 1990 from James River Company. Plaintiffs are former employees or the spouses of former employees who worked at this mill and took early retirement between 1991 and 1996.

These employees were represented by the Association of Western Pulp and Paper Workers (AWPPW), which had bargained for an early retirement incentive plan in a document referred to as the "AWPPW Simpson Collective Bargaining Agreement" (CBA). The original incentive plan provided for company health insurance for early retirees until they reached age sixty-five. Spouses also received coverage until they reached age sixty-five, or for a total of fifteen years, whichever occurred first.

An initial Benefit Booklet (First Booklet) was created in 1990 as part of Simpson's takeover of the mill. A second Benefit Booklet (Second Booklet) was issued to employees before the mill was closed in 1996. Df. Concise Stmt. of Mat. Facts, ¶ 6; Pls.' Resp. to Df. Concise Stmt., ¶ 6 (admitting).

The First Booklet addressed early retirement medical coverage:

> Coverage for you will be continued until you become eligible for Medicare, attain age 65, or until your death, whichever occurs first. Coverage for your dependent spouse may be continued until he or she becomes eligible for Medicare, attains age 65, remarries, or after 15 years past your retirement date, whichever occurs first.

Df. Concise Stmt. of Mat. Facts, ¶ 6; Pls.' Resp. to Df. Concise Stmt., ¶ 6 (admitting). The Second Booklet provided essentially the same benefit. Df. Concise Stmt. of Mat. Facts, ¶ 7; Pls.' Resp. to Df. Concise Stmt., ¶ 7 (admitting).

Plaintiffs Hawke, Anderson, Elledge, Poschwatta, Gundiff, Cusick and Enevoldsen retired while the First Booklet provision was in effect.

A second CBA was executed in 1993-94, and a third CBA was reached in 1995. All three CBAs provided similar health insurance benefits for retirees. Df. Concise Stmt. of Mat. Facts, ¶ 4; Pls.' Resp. to Df. Concise Stmt., ¶ 4 (admitting). All participants covered by these health care plans were "subject to the same level of contributions as active employees and to the same health care plan provision changes which take effect from time to time." Df. Concise Stmt. of Mat. Facts, ¶ 5; Pls.' Resp. to Df. Concise Stmt., ¶ 5 (admitting).

The parties agree that some changes did occur – there were increases in deductible and premium co-payment amounts and changes to procedures covered in the Plans; these changes applied to active employees and retirees alike. Df. Concise Stmt. of Mat. Facts, ¶ 10; Pls.' Resp.

to Df. Concise Stmt., ¶ 10 (admitting that "some changes" in benefits described by defendant in its Concise Statement of Facts took place).

Both the First and Second Booklets included the following reservation clause:

> The Company reserves the right to alter, amend, delete, cancel or otherwise change welfare, pension or savings plan benefits at any time, subject to negotiation with the Union. If the welfare plan is terminated, coverage for you and your eligible family members will end.

Df. Concise Stmt. of Mat. Facts, ¶ 8; Pls.' Resp. to Df. Concise Stmt., ¶ 8 (admitting).

In 1996, Simpson announced it was closing the Evergreen Mill. Simpson and AWPPW executed a Closure Memorandum of Agreement on August 21, 1996, extinguishing the third CBA. Simpson also modified the First Booklet in 1996. The Second Booklet provided that coverage may be extended to employees retiring on or after December 1, 1990, aged at least fifty-five years but less than sixty-five, and not yet eligible for Medicare. Df. Concise Stmt. of Mat. Facts, ¶ 7; Pls.' Resp. to Df. Concise Stmt., ¶ 7 (admitting).

Each retiree plaintiff and spouse plaintiff met with a Simpson representative, Ms. Sherry Main, immediately prior to retiring. At each meeting, Ms. Main read a prepared statement that the plaintiff then signed. That statement provided in part:

> I hereby apply for Hospital-Surgical-Medical Benefits for myself and eligible dependents. I understand that these benefits are subject to the terms and conditions of the carrier's group contract, issued to Simpson Paper Company, which covers employees of the Company who are actively at work and their eligible dependents. . . . Coverage for myself will terminate on the first day of the month in which I attain age 65 or become eligible for Medicare, if earlier[.]

Plaintiffs acknowledge that defendant provided retiree health insurance coverage until 2002. In 2002, Simpson announced that it was phasing out the retiree health care benefits and

would completely terminate them in 2004. Simpson met with national representatives of the AWPPW regarding this, because after the 1996 mill closure, Local 166 no longer existed. Df. Concise Stmt. of Mat. Facts, ¶ 15; Pls.' Concise Stmt. of Mat. Facts, ¶ 15-16 (acknowledging that representatives of defendant and AWPPW met in 2002 to discuss the termination of benefits).

Plaintiffs assert that Simpson wrongfully terminated the health insurance benefits in June 2004 in violation of the CBA and in violation of plaintiffs' vested rights. Plaintiffs assert violations of ERISA and § 301 claims on grounds that their health insurance benefits became vested rights and therefore could not be terminated lawfully, and/or that Plan fiduciaries misrepresented to them that their health benefits would vest upon retirement. Both sides seek summary judgment.

## **STANDARDS**

Summary judgment is appropriate if no genuine issue exists regarding any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of*

*Haw.,* 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

The Employee Retirement Income Security Act of 1974, § 29 U.S.C. 1132, provides that a participant or beneficiary may bring a civil action to recover benefits due or to enforce his or her rights under the terms of the plan. § 29 U.S.C. 1132(a).

The Supreme Court has held that § 301 of the LMRA implicitly authorizes the development of a federal common law governing the interpretation of collective bargaining agreements and the preemptive scope of § 301. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957).

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.

Section 301's preemptive force extends to any claim the resolution of which "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

**DISCUSSION**

1.   Vesting/ERISA Claims

There is no dispute that in 1990 defendant's employees were provided with health insurance when they retired. Unlike pension plans, welfare plans are not subject to the vesting requirements of ERISA. 29 U.S.C. § 1051(1). Generally, benefits under a welfare plan are neither vested nor accrued, and an employer may amend or terminate such benefits pursuant to the terms of the plan at any time. *Cinelli v. Security Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995) (citing *Serrato v. John Hancock Life Ins. Co.*, 31 F.3d 882, 884 (9th Cir. 1994); *Joanou v. Coca-Cola Co.*, 26 F.3d 96, 98 (9th Cir. 1994)).

Employers and employees, however, may themselves set out by agreement whether retiree welfare benefits vest, or whether they may be terminated. *Cinelli*, 61 F.3d at 1441 (citations omitted). "A contractual agreement for vesting of benefits must be found in the plan documents." *Id*. "Such extra-ERISA commitments must be found in the plan documents and must be stated in clear and express language." *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 937 (5th Cir. 1993).

Simpson argues that the right to these benefits never vested, and that therefore it was free to change or terminate the benefits at any time. Plaintiffs insist that their retirement health insurance benefits were vested, and that therefore plaintiffs have viable ERISA claims. This

Page 7    Opinion and Order

court concludes that plaintiffs fail to meet their burden of establishing that their benefit-rights vested.

        a.       Standards for Vesting

"Simply put, an employee's rights under an ERISA welfare benefit plan do not vest unless and until the employer says they do." *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1160 (9th Cir. 2001). Plaintiffs bear the burden of establishing that the CBA waived the employers' inherent right to modify or terminate its welfare plans, and that the employer instead committed itself to offering vested benefits. *Krishan v. McDonnell Douglas Corp.*, 873 F. Supp. 345, 349 (C.D. Cal. 1994). Put differently, the plaintiffs bear the burden to establish unambiguously that the contract provisions at issue have vested. *See Bower v. Bunker Hill Co.*, 725 F.2d 1221, 1223 (9th Cir. 1984). Where the contract unambiguously grants a benefit beyond the term of a contract, the right to that benefit is vested; if the benefit is plainly limited to the terms of the agreement, the benefits are not vested. *Id*. As the Sixth Circuit phrased this point, "[t]o vest benefits is to render them forever unalterable." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998).

        b.       Fluctuating Benefits

As noted above, the parties' second and third CBAs stated that retirees were "subject to the same level of contributions as active employees and to the same health care plan provision changes which take effect from time to time." Df. Concise Stmt. of Mat. Facts, ¶ 5; Pls.' Resp. to Df. Concise Stmt., ¶ 5 (admitting).

Plaintiffs acknowledge this flexibility in their benefits to a limited extent, quoting provisions from the 1990 agreement that allowed retirees to change coverage on the same basis

as active employees, and from the 1995 CBA that discussed changes during open enrollment periods and continuation periods, during which times defendant would pay for coverage on the same basis as active employees. Pls. Reply to Df.'s Mo. For S.J. at 7. Relatedly, plaintiffs admit that "some changes" in benefits described by defendant – increases in deductible and premium co-payment amounts and changes to procedures covered in the Plans – took place for employees and retirees alike. Pls. Resp. to Df. Concise Stmt., ¶ 10.

Plaintiffs assert that provisions establishing that their benefits could fluctuate "do not excuse coverage in any way" but instead "function as an affirmative grant that the retirees will have the same right to change coverage that active employees of Simpson have . . . ." Pls. Reply to Df.'s Mo. for S.J. at 8. This argument is misplaced.

The significance of the provisions and the changes that occurred is not that coverage to plaintiffs was ever "excused." Nor are the provisions dispositive as "affirmative grants" of coverage. Rather, the admissions that plaintiffs' benefits fluctuated defeat any assertions that the rights to such benefits should be construed as vested. Benefits that can be, and are, modified are not "forever unalterable" and therefore not vested. Plaintiffs fail to meet their burden of establishing unambiguously that defendant ever waived its inherent right to modify or terminate its welfare plans, and instead committed itself to offering vested benefits. Defendant is entitled to summary judgment on all claims that require a finding that plaintiffs' rights vested.

    c.    Reservation Clause and the *John Morrell* Decision

Defendant also supports its summary judgment motion with reliance upon the reservation clause provided in the First and Second Booklets. As noted above, this language provided that defendant "reserves the right to alter, amend, delete, cancel or otherwise change welfare, pension

or savings plan benefits at any time, subject to negotiation with the Union." Df. Concise Stmt. of Mat. Facts, ¶ 8; Pls.' Resp. to Df. Concise Stmt., ¶ 8 (admitting).

Both parties address the decision in *John Morrell & Co. v. United Food & Comm'l Workers Int'l Union*, 37 F.3d 1302 (8th Cir. 1994) in their efforts to interpret the significance of the reservation clause. In that case, the union asked the court to interpret a clause that allowed the employer and union to change retiree benefits upon mutual agreement as meaning that the parties were required to concur on any modifications to retiree benefits. The Eighth Circuit reasoned that even if the union's interpretation were adopted, "it is further evidence that both [the employer] and the Union recognized that retirement health benefits were subject to periodic modification, a recognition inconsistent with the Union's contention that each Master Agreement conferred vested benefits." *Id*. at 1308.

Plaintiffs attempt to distinguish *John Morrell* on grounds that the employees in that case did not rely upon any other prior explicit statements from the employer that could be construed as vesting language, and so unsuccessfully attempted to *create* vesting from the language in the parties' agreement that permitted modifications. *See id*. at 1308.

Here, plaintiffs assert, the CBAs already contained plain language that vested the right to retirees' health insurance until the age of sixty-five, independent of the parties' reservation clause. Plaintiffs argue that the *John Morrell* court merely held that a "subject to negotiation" reservation clause will not support an argument that the benefits negotiations themselves created vested rights in the benefits. Such reasoning is inapplicable, plaintiffs contend, where the benefits at issue have already vested.

Plaintiffs also urge the court to reject defendant's reliance upon the reservation clause because the clause: (1) failed to specifically incorporate "health insurance benefits" in its scope; (2) reserved the right only to alter plans *subject to negotiation with the union*, and Simpson failed to make changes through negotiation with the AWPPW as required; and (3) should be construed as applying only as to active employees, not retirees, because changes had to be negotiated with the AWPPW, the entity that represented active employees.

After careful consideration of the parties' arguments, this court concludes that the applicable reservations clause further precludes any interpretation of the CBA language as expressly vesting the rights to the health insurance benefits, and so provides independent grounds for granting summary judgment to defendant. The First and Second Booklets contain the reservation clause quoted above. The clauses explicitly reserved the right to change welfare plan benefits, and plaintiffs' assertion that health insurance benefits should fall outside the scope intended by the phrase "welfare plan benefits" is rejected.

Similarly, plaintiffs' contention that defendant may have failed to comply with the alleged requirement to negotiate with the AWPPW before changing the benefits is unavailing. For purposes of determining whether the rights at issue vested, this court need not resolve whether the benefits changes were made after negotiation with the AWPPW. Rather, to paraphrase a persuasive holding from the *John Morrell* decision, the true significance of the reservation clause is that it serves as further evidence that both defendant and plaintiffs' union recognized that retirement health benefits were subject to periodic modification, a recognition that is inconsistent with plaintiffs' contention that those benefits should be construed as vested. *See John Morrell*, 37 F.3d at 1308.

Finally, this court also rejects plaintiffs' interpretation that the Booklets' clauses reserved only the right to alter active employees' benefits. Plaintiffs have admitted that retiree medical benefit coverages were to be treated on the same basis as active employees. Df. Concise Stmt. of Mat. Facts, ¶ 9; Pls.' Resp. to Df. Concise Stmt., ¶ 9 (admitting). Changes to the active employees' benefits applied to the retirees' benefits, as well. Df. Concise Stmt. of Mat. Facts, ¶ 10; Pls.' Resp. to Df. Concise Stmt., ¶ 6 (admitting to "some changes"). Accordingly, to the extent that the reservation clause permitted defendant to alter health insurance benefits, the clause applied to active employees and retirees equally.

In sum, the fluctuating nature of the health insurance benefits that defendant offered to active employees and retirees alike, coupled with the reservation clause that explicitly gave notice that defendant could at least attempt to alter, amend, or delete welfare plan benefits at any time, establish that plaintiffs cannot meet their burden of showing that defendant unambiguously promised to provide plaintiffs with a vested right to uninterrupted health insurance benefits. Accordingly, the court is compelled to grant summary judgment to defendant on all claims advanced by plaintiffs that are contingent upon a finding that plaintiffs' benefit-rights were vested. This includes plaintiffs' § 301 claims.

2. Fiduciary Breach Claims

Plaintiffs also allege that defendant, acting in a fiduciary capacity, misrepresented its power to alter future benefits under the Plan. Plaintiffs seek monetary and injunctive relief for these fiduciary breaches. Although these claims and defendant's arguments for summary judgment regarding them are left unaddressed by plaintiffs in their responsive briefing to defendant's motion, plaintiffs assert that they are entitled to summary judgment on their fiduciary

breach claim in their brief mis-titled "Reply to Defendant's Motion for Summary Judgment," filed December 6, 2004. In that brief plaintiffs clarify their position as asserting that Sherry Main (Main) served as an agent to defendant while she made material misrepresentations when she advised each retiree (or his or her spouse) that health insurance coverage would be provided until the beneficiary attained age sixty-five. Plaintiffs contend that Main's failure to alert each retiree about the potential loss of benefits constituted a falsehood and a breach of defendant's fiduciary duties to the retirees. Pls. Reply to Df.'s Mo. for S.J. at 10. In light of the scope of briefing presented by plaintiffs, any other possible grounds for these claims are now construed as waived by plaintiffs.

This court assumes without deciding that plaintiffs have adequately pled alleged "material misrepresentations" with sufficient particularity in conformity with Federal Rule of Civil Procedure 9(b), and have demonstrated the basis upon which Simpson can be identified as a fiduciary to the Plan, and have also presented sufficient evidence to establish as a matter of law that Simpson, through its representative Main, exercised control over the welfare plan at issue. Even so, defendant is nevertheless entitled to summary judgment on these claims.

The parties assert that ERISA standards apply to these claims. Under such standards, a "fiduciary" must "discharge . . . duties with respect to a plan solely in the interest of the participants and beneficiaries." ERISA § 404(a), 29 U.S.C. § 1104(a). A fiduciary is obliged to "convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Farr v. U.S. West Commc'ns., Inc.*, 151 F.3d 908, 914 (9th Cir. 1998) (quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) (citation omitted)).

In *Farr*, the employer failed to explain to its employees "in either written or verbal communications" some potentially negative tax consequences they could incur by participating in a certain retirement plan. *Id*. In concluding that this failure was a breach of the employer's fiduciary duties under ERISA, the Ninth Circuit referred to repeated omissions in the employer's written summary plan descriptions. The court found the omissions "misleading for employees making the important decision of whether to exercise the . . . retirement option," and therefore, in violation of ERISA's requirement that "[t]he format of the summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries." *Id.*, 151 F.3d at 914 (quoting 29 C.F.R. § 2520.102-2(b)). Additional publications and broadcasts to the employees promoted significant tax advantages of the retirement plan and overlooked any mention of possible adverse consequences. *Id*. In fact, the Ninth Circuit noted that the employer "confirmed that a deliberate decision was made to leave the [negative] information out to avoid 'confusing' the issues for other employees," and did so to "save money" that otherwise would have been spent to provide the information. *Id*. at 914-15.

The undisputed facts here differ dramatically. In the context of all of the information (written and oral) available to plaintiffs, they were provided with sufficiently detailed information to alert them to the nature and likelihood of possible changes or even termination of the benefits at issue. There is no evidence that defendant made a deliberate decision to instruct Main to intentionally omit in her prepared statement to plaintiffs any acknowledgment that plaintiffs' benefits could change. To the contrary, her statement included an acknowledgment that the benefits were "subject to the terms and conditions of the carrier's group contract, issued to Simpson Paper Company, which covers employees of the Company who are actively at work

and their eligible dependents." While that statement did not directly address the explicit possibility of the benefits terminating, it nevertheless provided plaintiffs a degree of warning regarding the non-vested nature of the benefits.

The Ninth Circuit recognizes that an employer's efforts to describe a welfare plan does not violate ERISA "merely because it could have included language more specifically discussing the precise situation of a particular beneficiary." *Farr*, 151 F.3d at 915 (quoting *Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404, 1408 (9th Cir. 1989)). Employers are in compliance with ERISA "if an employee is alerted 'to recognize that certain events or actions could trigger a loss of benefits. . . .'" *Id.*, (quoting *Stahl*, 875 F.2d at 1408).

Defendant met the appropriate standard of care owed to plaintiffs despite Main's failure to more specifically discuss the possibility that the mill subsequently could close and the benefits could be terminated. After considering all of the provisions in the Booklets and CBAs, as well as Main's statement offered to plaintiffs when she met with them individually (which, it must be noted, did not itself contradict any terms of plaintiffs' benefits), this court concludes as a matter of law that defendant conveyed sufficiently complete and accurate information material to the beneficiary's circumstances. Accordingly, defendant is entitled to summary judgment on the remaining aspects of plaintiffs' breach of fiduciary duty claims.

\\\
\\\

3.      Estoppel

The final issue meriting discussion is an estoppel claim that arises in plaintiffs' briefing filed in support of the summary judgment motion. Plaintiffs failed to assert this claim in their Complaint. Their subsequent assertion of the issue is therefore construed as a request for leave to amend their Complaint to include an estoppel claim. Leave to amend a complaint for purposes of pleading an ERISA estoppel claim is entrusted to the sound discretion of the trial court. *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996).

This court concludes that permitting plaintiffs' proposed amendment would be unfairly prejudicial to defendant. Defendant completed discovery, concluded depositions, and prepared its dispositive motion with no notice that plaintiffs would raise an estoppel claim in their summary judgment briefing. Permitting plaintiffs to now seek to litigate this claim is not in the interests of justice. Thwarting defendant's carefully developed defense at this stage would constitute a substantial, unfair prejudice to defendant.

In *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989), the court found that the trial court acted within its discretion in denying leave to amend when leave was sought after discovery closed and six weeks after the defendants had filed separate motions for summary judgment. The court held that "[a] party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories in an amended complaint." *Id*. This reasoning is equally applicable here, a case in

Page 16    Opinion and Order

which plaintiffs have waited until after the parties have filed thorough, carefully crafted dispositive motions.

Moreover, this court concludes that plaintiffs' proposed amendment would be futile. "An ERISA beneficiary may recover benefits under an equitable estoppel theory upon establishing a material misrepresentation, reasonable and detrimental reliance upon the representation and extraordinary circumstances." *Pisciotta*, 91 F.3d at 1331 (citing *In Re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, 58 F.3d 896, 907 (3rd Cir. 1995). There are also two additional prerequisites a plaintiff must meet in attempting to allege a claim of equitable estoppel in an ERISA action in the Ninth Circuit: first, the provisions of the plan at issue must be ambiguous such that reasonable persons could disagree as to their meaning or effect; and second, representations must be made to the employee involving an oral interpretation of the plan. *Pisciotta*, 91 F.3d at 1331 (citing *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821-22 (9th Cir. 1992). Both conditions must be met before a beneficiary has a valid equitable estoppel claim. *Id.* (citations omitted).

After scrutinizing the record, this court finds no evidence of any material misrepresentations on the part of defendant or its representative Main, and no likelihood that reasonable persons could disagree about the non-vested nature of the retirees' health insurance benefits. While Main's statement may have omitted an acknowledgment of defendant's reservation clause or a discussion about the possibility that the benefits could be terminated, such an omission fails to rise to a level of being a material misrepresentation. The Booklets and policy terms plainly establish that benefits could fluctuate and, in the court's view, cannot be

construed as ambiguous. Finally, the record is also devoid of any evidence of extraordinary circumstances sufficient to support plaintiffs' proposed estoppel claim.

\\\

CONCLUSION

For the reasons provided above, plaintiff's Motion for Summary Judgment (Doc. 23) against defendant Simpson is denied, and defendant's Motion for Summary Judgment (Doc. 22) is granted.

IT IS SO ORDERED.

DATED this 14 day of October, 2005.

　　　　　　　　　　　　　　　　　　　　　/s/ Ancer L.Haggerty

　　　　　　　　　　　　　　　　　　　　　Ancer L. Haggerty
　　　　　　　　　　　　　　　　　　　　　United States District Judge